# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DICTAPHONE CORPORATION, :
  Plaintiff    :
         :  Case No. 3:05 CV 266 (CFD)
v.         :
         :
CYNTHIA GAGNIER,   :
  Defendant    :

## RULING ON PENDING MOTIONS

Plaintiff Dictaphone Corporation ("Dictaphone") filed suit against defendant Cynthia

Gagnier in the Connecticut Superior Court, alleging that while Gagnier was employed by

Dictaphone, she breached her fiduciary duties to the corporation by failing to report incidents of

sexual harassment by her supervisor.  Gagnier removed the action to this Court, pursuant to 28

U.S.C. § 1441.[1]  Gagnier now has moved to dismiss this action under Federal Rule of Civil

Procedure 12(b)(2), on the ground that the Court lacks personal jurisdiction over her.

Alternatively, Gagnier seeks to transfer this action to the United States District Court for the

Central District of California pursuant either to this Court's authority under 28 U.S.C. §§ 1404(a)

or 1406(a).  Dictaphone has filed a cross-motion asking that a second action between the parties

(currently pending in the District Court for the Central District of California) be ordered

transferred to the District of Connecticut and consolidated with this action.

---

[1] The Court possesses subject matter jurisdiction, as the matter in controversy here
exceeds $75,000 in value, and the parties are citizens of different states.  Gagnier is a citizen of
California, while Dictaphone is a citizen of Delaware (the state of its incorporation) and
Connecticut (the location of its principal place of business).

I.      Discussion

        A.      Defendant's Motion to Dismiss for Lack of Personal Jurisdiction

        Gagnier claims that the Court lacks personal jurisdiction over her because she does not

meet the criteria of Connecticut's long-arm statute, Conn. Gen. Stat. § 52-59b, nor does her

conduct satisfy the "minimum contacts" requirement of the Due Process Clause of the Fourteenth

Amendment.

        When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff

bears the burden of proving that the court has jurisdiction over the defendant. See Amerbelle

Corp. v. Hommel, 272 F. Supp. 2d 189, 192 (D. Conn. 2003); see also Metro. Life Ins. v.

Robertson-Ceco Corp., 84 F.3d 560, 566-67 (2d Cir. 1996); Ensign-Bickford Co. v. ICI

Explosives USA, Inc., 817 F. Supp. 1018, 1026 (D. Conn. 1993). When no discovery has been

conducted, the plaintiff only needs to assert facts constituting a prima facie showing that the

defendant's conduct was sufficient for the court to exercise personal jurisdiction.  See Amerbelle,

272 F. Supp. 2d at 192-93.  All pleadings, affidavits, and allegations are construed "in the light

most favorable to the plaintiff and doubts are resolved in the plaintiff's favor."  Whitaker v.

American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001)

        In diversity cases, personal jurisdiction is determined by the law of the state in which the

district court sits.  See Arrowsmith v. United Press Int'l, 320 F.2d 219, 231 (2d Cir. 1963).

Connecticut utilizes a two-step process for determining personal jurisdiction: the Court must first

determine whether the state's long-arm statute reaches the foreign individual.   Second, if the

long-arm statute's requirements are met, the Court must then decide whether that exercise of

jurisdiction would offend due process.  See Bensmiller v. E.I. Dupont de Nemours & Co., 47

F.3d 79, 81 (2d Cir. 1995).

Connecticut General Statutes § 52-59b(a) governs the exercise of jurisdiction over nonresidents of the state.  Under that statute, personal jurisdiction over a nonresident individual exists if the individual or his agent:

> (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer . . . or a computer network . . . located within the state.

In the instant case, Dictaphone asserts that while she was employed as a sales executive with the corporation,[2] Gagnier "transacted business" in Connecticut under § 52-59b(a)(1) in the following ways: during the three-year period in which Gagnier was national sales director for the Integrated Voice Systems Division, she emailed a supervisor daily through Dictaphone's email system, whose servers are maintained in Connecticut; during the same period, Gagnier had to make phone calls to her supervisor and to a sales representative located in Connecticut; on at least three occasions during her employment with Dictaphone, Gagnier had to travel to Connecticut for business meetings and training and during one of those occasions, solicited

---

[2] Gagnier held several different positions during her tenure with Dictaphone.  From 1997 to 1998, she was an account executive; from 1998 to 2000, she was regional sales director for Dictaphone's West Coast region; from 2000 to 2003, she served as national sales director for the Integrated Voice Systems Division; and from September 2003 until February 2004, Gagnier held the title of national sales director for the Archiving Products division.  Gagnier was terminated on February 6, 2004 as part of a company-wide sales force reduction.

potential clients in Connecticut; and Gagnier utilized the resources of Dictaphone's corporate headquarters in Connecticut by submitting expense reports to the Accounting Department located there, receiving paychecks processed by the Connecticut-based Payroll Department, and consulting the Human Resources and Information Technology departments located within the state.[3]

Gagnier argues that she is protected from the reach of the long-arm statute by the "fiduciary shield" doctrine, in which "personal jurisdiction may not be asserted over [an officer] of a corporation based on [his] transaction of business in Connecticut where the [officer] did not transact any business other than through the corporation. . . ." Milne v. Catuogno Court Reporting Servs., Inc., 239 F. Supp. 2d 195, 203 (D. Conn. 2002) (quoting Adams v. Wex, 56 F. Supp. 2d 227, 229 (D. Conn. 1999)).  Since the Milne decision, however, the fiduciary shield doctrine has been disfavored by Connecticut courts.  See, e.g., Chase v. Cohen, 2004 U.S. Dist. LEXIS 26408, *12-*14 (D. Conn. Dec. 29, 2004) (rejecting application of fiduciary shield doctrine); Grunberger Jewelers v. Leone, 2004 U.S. Dist. LEXIS 11268, *10 (D. Conn. Jun. 18, 2004) ("The [Connecticut] Superior Court was also correct in Under Par [Associates, L.L.C. v. Wash Depot A., Inc., 47 Conn. Supp. 319, 793 A.2d 300 (Conn. Super. 2001)] in specifically rejecting the fiduciary shield doctrine in insulating corporate officers for their own conduct."); Under Par, 47 Conn. Supp. at 323-27 (holding that the fiduciary shield doctrine finds no support in the text of or policy underlying the Connecticut long-arm statute).

Furthermore, the Connecticut Supreme Court "construe[s] the term 'transacts any

---

[3] The parties agree that, while employed by Dictaphone, Gagnier's own office was located in California.

business' to embrace a single purposeful business transaction." <u>Zartolas v. Nisenfeld</u>, 184 Conn. 471, 474, 440 A.2d 179 (Conn. 1981).  Under that standard, Gagnier's business travel and visits to potential clients in Connecticut, no matter how brief those encounters may have been, would qualify as "transacting business," to say nothing of her contacts with the Dictaphone corporate headquarters within the state.

Assuming that the relevant test of the Connecticut long-arm statute is met as to Gagnier, the Court must now address whether exercising jurisdiction over her would comport with due process.  The due process analysis consists of two components: whether the defendant has certain "minimum contacts" with the forum state, and whether exercise of jurisdiction is reasonable under the circumstances of the particular case.  <u>See</u> <u>Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez</u>, 305 F.3d 120, 127-29 (2d Cir. 2002).  "Minimum contacts" are established when a defendant "purposely avails [her]self of the privileges and benefits" of the forum state.  <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958).  The purposeful availment requirement protects defendants from being haled into court based on "random, fortuitous or attenuated contacts," <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985), and assures that they have "fair warning" that their conduct could subject them to suit in the forum state.  <u>See</u> <u>Bensmiller v. E. I. DuPont de Nemours & Co.</u>, 47 F.3d 79, 85 (2d Cir. 1995) ("[P]urposeful conduct provides a defendant with 'fair warning' that he and his property may be subject to the exercise of that forum state's power."); <u>see</u> <u>also</u> <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980) (defendants subject to jurisdiction only where their "conduct and connection with the forum state [is] such that [they] should reasonably anticipate being haled into court there.").  This inquiry allows the Court to determine whether its exercise of personal jurisdiction comports with

5

"traditional notions of fair play and substantial justice." <u>Int'l  Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).

The Court concludes that Gagnier did not purposely avail herself of the privileges and benefits of Connecticut such that she could reasonably anticipate being haled into court here—<u>for the instant action</u>.[4]  The parties do not dispute that throughout Gagnier's employment with Dictaphone, she worked from an office located in California.  Gagnier's contact with Connecticut was limited to phone calls, email communications, and several brief business trips.[5]  While Gagnier did submit expense reports to Dictaphone's Connecticut headquarters and received paychecks processed through the payroll department located in Connecticut, these contacts are too attenuated to serve as the basis for Connecticut exercising personal jurisdiction over her on this claim.  <u>See, e.g.</u>, <u>Savin v. Ranier</u>, 898 F.2d 304, 307 (2d Cir. 1990) (holding that exercise of personal jurisdiction not justified where defendant's contact with forum state consisted of designating Connecticut as place of payment on promissory note).

Importantly, none of the alleged conduct which underlies this suit took place in Connecticut.  Dictaphone alleges that Gagnier breached her fiduciary duty to the corporation by

---

[4] This conclusion is based on the specific cause of action alleged by Dictaphone here. The Court expresses no opinion as to whether Gagnier could be considered to have availed herself of the privileges and benefits of Connecticut regarding other employment-related claims that Dictaphone might have brought.

[5] Gagnier avers that in her almost seven years' employment with Dictaphone, she spent no more than ten days in Connecticut for Dictaphone-related meetings or training, a figure that Dictaphone does not dispute.  While Dictaphone claims that Gagnier made sales presentations to two potential clients in Connecticut during one of those trips, the corporation does not deny Gagnier's further claim that she never had a client or made a sale within the state.

failing to report incidents of sexual harassment by her supervisor Timothy Brankin.[6]  The parties

agree that the alleged harassment took place in the fall of 2003.  Gagnier specifically claims that

the acts of harassment took place in California, Colorado, Pennsylvania, and Florida, and

Dictaphone neither denies those assertions nor makes claims to the contrary.  The parties further

agree that Brankin worked out of an office in Colorado; neither side offers evidence of any

contacts Brankin had or has with Connecticut.  Dictaphone, however, alleges that because

Gagnier was a management-level employee of Dictaphone, any breach by her relates back to her

duties, responsibilities, and business contacts to Dictaphone's headquarters in Connecticut, thus

making the exercise of personal jurisdiction over her foreseeable.

Even if that were true and Gagnier found to have met the minimum contacts test, due

process also requires that the exercise of personal jurisdiction be reasonable, comporting with

"traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316.  The burden

is on the defendant to prove a compelling case that personal jurisdiction is unreasonable under

the circumstances.  Broad. Mktg. Int'l., Ltd. V. Prosource Sales & Mktg., Inc., 345 F. Supp. 2d

1053, 1063 (D. Conn. 2004).  The United States Supreme Court has identified five factors to be

considered in evaluating the reasonableness and fairness of exercising jurisdiction: 1) the burden

that the exercise of jurisdiction will impose on the defendant; 2) the interests of the forum state in

adjudicating the case; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the

interstate judicial system's interest in obtaining the most efficient resolution of the controversy;

and 5) the shared interest of the states in furthering substantive social policies.  See Asahi Metal

---

[6] Gagnier reported to Brankin during the period that she served as Dictaphone's national
sales director for archiving products, a position she assumed in September 2003.

Industry Co. v. Superior Court of California, 480 U.S. 102, 113 (1987).

The Court finds that Gagnier has met her burden of showing that jurisdiction in Connecticut would be unreasonable under the circumstances.  Gagnier, who is currently unemployed and a resident of California, would suffer a great financial and logistical burden litigating the action in Connecticut.  She has also provided a list of potential witnesses to her case, none of whom reside in Connecticut and several of whom reside in California.[7]  The interests of the Connecticut courts in adjudicating this case have not been shown demonstrably more compelling than litigating the action somewhere more convenient for Gagnier, including her suggested jurisdiction of California.  Nor has it been shown that Dictaphone's interest in obtaining convenient and effective relief would be hindered by litigating this action elsewhere.[8]

Most compellingly, however, Gagnier has demonstrated that the interstate judicial system's interest in resolving this controversy and the shared interest of the states in furthering substantive social policies would be enhanced by litigating this action elsewhere.  Gagnier has provided evidence, which is uncontradicted by Dictaphone, that she filed a claim of sexual discrimination and retaliation with the California Department of Fair Employment and Housing on or about September 21, 2004, and received a notice of case closure and right-to-sue letter

---

[7] Dictaphone argues that many of the necessary witnesses indeed reside in Connecticut, but provides the name of only one such witness.  It also argues that much of the documentary evidence for this case exists in Connecticut.

[8]  Given that Dictaphone by its own admissions is a national corporation with offices and employees across the country, it presumably has litigated disputes in jurisdictions outside of Connecticut.

from that agency on September 23, 2004.[9]  See Doc. #6 at Exhs. B, C.  Upon Gagnier notifying

Dictaphone of her administrative complaint, they filed the instant action in Connecticut Superior

Court on or about January 6, 2005.  Gagnier filed her own federal action in the United States

District Court for the Central District of California, based upon the right-to-sue letter she had

received, on January 28, 2005.  Given this record, which the Court again notes is uncontradicted

by Dictaphone, the instant action appears related to events which first were evaluated by a

California state agency.  Efficiency and comity suggest that this matter also is better pursued in

California.  The Court concludes that exercising personal jurisdiction over Cynthia Gagnier

would be unreasonable under these circumstances, and therefore would not comport with the

dictates of federal due process.

### B.    Defendant's Motion to Transfer

In the event that her motion to dismiss is not granted, Gagnier has moved in the

alternative that this case be transferred to the United States District Court for the Central District

of California.[10]

---

[9] Gagnier's administrative complaint alleged the same sexual harassment by Brankin which underlies the current action.

[10] Dictaphone argues that the "first-filed rule" of federal jurisprudence militates instead for transferring Gagnier's pending federal action in the Central District of California to this district.  The "first-filed" rule states that "where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action," Meeropol v. Nizer, 505 F.2d 232, 235 (2d Cir. 1974), unless "there are special circumstances which justify giving priority to the second" action. William Gluckin & Co. v. International Playtex Corp., 407 F.2d 177, 178 (2d Cir. 1969) (citations omitted).  The Court has considered Dictaphone's argument under the rule, but concludes that the facts discussed supra warrant keeping these cases together in the Central District of California.  Of course, Dictaphone's being the first to file its federal action cannot cure the lack of personal jurisdiction over the defendant in Connecticut.

Even where a district court lacks personal jurisdiction, that does not "vitiate its power to transfer" a case under 28 U.S.C. § 1406(a).   Corke v. Sameiet M.S. Song of Norway, 572 F.2d 77, 79 (2d Cir. 1978).  That statutory provision states that

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case as to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).   The statute has been interpreted to mean that an otherwise proper venue where the plaintiff could not obtain personal jurisdiction over the defendant constitutes a "wrong division or district."  See Corke, 572 F.2d at 79-80; see also Goldlawr, Inc., v. Heiman, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not.").  Whether transfer should be ordered depends on whether a transfer would be "in the interest of justice."  The Court concludes that transfer of this case to the Central District of California is warranted.  The defendant has alleged no prejudice from transfer, whereas outright dismissal of the case might severely prejudice the plaintiff's ability to file a similar claim in the California courts.  Compare Corke, 572 F.2d at 80 (finding that dismissal could cause prejudice to the appellant due to transferee state's statute of limitations and holding that "transfer would permit appellant to benefit from whatever tolling of those statutes has taken place").  Moreover, as in the Corke case, transfer would allow the plaintiff to obtain personal jurisdiction over the defendant, currently lacking in the present district.  On these facts, transfer would work no prejudice on the defendant, while it potentially "prevents a substantial injustice" to the plaintiff.  Id. at 81.

10

**II.      Conclusion**

      For the above reasons, the Defendant's Motion to Dismiss or Transfer [Doc. #5] is

DENIED IN PART, as to the defendant's motion to dismiss, and GRANTED IN PART, as to the

motion to transfer.  The Plaintiff's Cross-Motion to Transfer and Consolidate [Doc. #11]

accordingly is DENIED.  The Clerk is directed to transfer this case to the United States District

Court for the Central District of California.

      So ordered this _21st_ day of March 2006 at Hartford, Connecticut.


          _/s/ CFD _____
          **CHRISTOPHER F. DRONEY**
          **UNITED STATES DISTRICT JUDGE**